# Commonwealth *v.* O'Donnell.

[APRIL 29, 1847.]

The legislature may incorporate aliens, notwithstanding their adverse allegiance: the existence of adverse allegiance goes, not to the power of the legislature, but to the propriety of its exercise.

Aliens cannot be incorporated under the provisions of the act of 6th April,1791.

In *quo warranto*, where there are issues as well of law as of fact, after judgment for the respondents on demurrer, the complainants cannot discontinue without the consent of the opposite party.

THIS was a *quo warranto,* issued in the name of the commonwealth, at the relation of the county of Philadelphia, against Nicholas O'Donnell, John O'Donnell, and John Hughes, under the following circumstances:

On the 10th November, 1804, Michael Hurley, Matthew Carr and John Rossiter were incorporated, under the act of 6th April, 1791, by the style and title of "The Brothers of the Order of Hermits of St. Augustine." The charter provided that there should be an annual election of from two to five clerks, or priests of the order, who should be thereby constituted members of the corporation. This annual election having been neglected for many years, and Matthew Carr and John Rossiter being deceased, on the 11th June, 1832, an act of assembly was passed, (Pamph. Laws, p. 606) authorizing Michael Hurley to elect two or more additional permanent members of the corporation, possessing the qualifications required by the charter; discontinuing the annual election of members, and confirming the charter in all other particulars.

The church of St. Augustine having been destroyed by a mob in 1844, suit was brought against the county, and this writ of *quo warranto* was taken to test the authority of the defendants to act as corporators.

[ Commonwealth *v.* O'Donnell. ]

The defendants in their pleas alleged that they were the present members of the corporation, legally chosen, under their charter, and the replications did not deny their citizenship. Issues of fact were taken as to whether the original charter was duly granted under the act of 1791; whether the annual income of the corporation exceeded five hundred pounds, to which they were limited by the charter; and whether the defendants were duly elected and qualified. The defendants demurred specially, upon the ground of duplicity, to allegations in the replications, that Carr, Rossiter and Hurley were not citizens of Pennsylvania in 1804 and 1832. And general demurrers were filed to the following replications.

1. That the corporation is a foreign society and order, instituted by a foreign potentate, (the pope of Rome,) holding all the estates and property, offices, franchises, privileges and powers, of which they are seized or possessed under the said foreign potentate, and liable to be dissolved and destroyed by him.

2. That the said Carr, Rossiter and Hurley, when they signed the act of incorporation, were Roman catholic priests, liable to be removed from said office by the bishop of the diocess, or the pope; and that the said bishop was liable to be removed by the pope; and that, at the time of signing, they were under the following obligation and oath, viz. " that they did promise and swear true obedience to the Roman bishop, the successor of St. Peter, the prince of the apostles, and vicar of Jesus Christ, to wit, the pope of Rome."

3. That the said Carr, Rossiter and Hurley, when they signed the said act or instrument of incorporation, were members of the foreign order of " *Fratres ordinis eremitarum Sancti Augustini;*" which said order was under a superior residing in foreign parts, out of the limits and jurisdiction of the United States, to wit, in the city of Rome; and owing allegiance to a foreign potentate, to wit, the

[ Commonwealth *v.* O'Donnell. ]

pope of Rome. And that they were liable to be removed from the office and membership of the said order, at the will and pleasure of the said superior; and that they were under an oath of obedience to the said superior.

4. That the said corporation have not kept up a succession of corporators, according to law, but have allowed the same to be destroyed; and the corporate offices, franchises and privileges to become extinct.

*H. J. Williams,* (with whom was *W. A. Stokes*) argued for respondents.

*P. A. Browne,* for relators, argued the following points: Can a foreign order, instituted by a foreign potentate, who hold all their estate, franchises and powers under such foreign potentate, and are liable to be dissolved by him, be incorporated under the act of 1791? Can three catholic priests, who are liable to be removed from their offices at the will of the bishop or of the pope, and who have sworn true obedience to the pope, be so incorporated? Can three catholic priests, members of a foreign order of monks, created and existing in foreign parts, under a superior there residing, and owing allegiance to a foreign potentate, and which priests are liable to be removed from the order at the will of the said foreign superior, to whom they have taken an oath of obedience, be so incorporated? Is the charter destroyed by the members neglecting to keep up a succession? And has the act of 11th June, 1832, by declaring that *the charter, so far as the same was not thereby altered and amended, should be and was thereby confirmed, and should continue in full force and virtue,* cured all these defects?

The court declined hearing *W. M. Meredith,* in reply; and the following opinion, on the issues of law, was delivered by

[ *Commonwealth v. O'Donnell.* ]

GIBSON, C. J.—If the question stood on the act of 1791, I should hold the charter to be invalid. The efforts of the commonwealth have been mainly directed to show that the original corporators were not citizens of Pennsylvania, within the intent of the statute. Probably they were not, but the charter was, in any event, forfeited, by reason that the succession had not been regularly kept up. The congregation conceded this, when, in 1832, it procured a statute to fill up the gap. The legislature not only enacted it, but authorized the survivor of the original corporators to elect and join to himself two or more permanent corporators, possessing the qualifications required by the charter. This gave the corporation a new *status*, and operated as a confirmation of it, at least from that time. The replications do not deny that the succession has since been regularly kept up, by filling the vacancies with citizens of Pennsylvania. If, then, the legislature had competent power to enact the statute, the corporation is a valid one, and the predecessors of the respondents were legally chosen permanent corporators, in 1832; Mr. Hurley being appointed by the legislature itself. It is immaterial how invalid the charter had previously been, for the respondents do not rely on it, and recourse has been had to it only as matter of inducement. Do any of the replications answer the whole plea? None, unless the legislature had not power to enact the statute of confirmation. I am not aware of any constitutional objection to it. The legislature may certainly incorporate foreigners, notwithstanding their adverse allegiance. And it might have dispensed with the qualification of citizenship in the amended charter: but it did not. Now, the inclination of my mind is, that the existence of adverse allegiance goes, not to the power of the legislature, but to the propriety of its exercise. I would not, in an inferior court, declare the statute to be invalid. As the replications do not answer the pleas, the demurrers are sustained, and judgment is rendered for the respondents.

[Commonwealth *v.* O'Donnell.]

Subsequently, the prothonotary, by direction of the complainant, entered a discontinuance, which the respondents treated as a nullity, and the case was placed on the trial list, for September term, 1847. When reached, *Mr. Horn R. Kneass,* for the complainant, stated that the case had been settled and discontinued, and objected to going to trial. *Mr. Stokes,* for the respondents, denied the right of the complainant to discontinue, without the consent of the opposite party, after judgment for them on demurrer; and asked for a trial of the issues of fact by a jury.

ROGERS, J.—Ruled, that the discontinuance was void; and the case then went on, and a verdict was rendered, on all the issues of fact, in favour of the respondents.*

* A discontinuance can only be entered by leave of the court; in England, this leave is obtained on motion, in the first instance; and here it is taken without the formality of an application, but subject to be withdrawn on cause shown for it; that is the whole difference : the act, when the propriety of it is contested, must, in the one shape or in the other, have the sanction of the court. *Schuylkill Bank* v. *Macalester,* 6 W. & S. 149.